**Donald E. GRETH**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.**

**Civ. A. No. 76-2181.**

United States District Court, E. D. Pennsylvania.

Oct. 28, 1977.

---

Richard A. Adams, Pine Grove, Pa., for plaintiff.

Kenneth A. Ritchie, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiff, Donald E. Greth, brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the denial by the Secretary of Health, Education and Welfare of his claim for disability insurance benefits. Before me for approval is the United States Magistrate's Report and Recommendation,[1] which concludes that summary judgment should be entered in favor of the plaintiff. For the reasons stated in this opinion, I am unable to approve the Magistrate's Recommendation, and I will instead remand the case to the Secretary for certain additional findings of fact.

Plaintiff's initial application for benefits was denied. A hearing was then held before an Administrative Law Judge in August, 1975. At that hearing, plaintiff testified that he suffers from various infirmities, including diabetes, obesity, loss of vision in one eye, high blood pressure, degenerative disc disease, arthritis, and nervousness. Report and Recommendation at 2. In particular, plaintiff testified that he is unable to sit for more than ninety minutes and that he is unable to stand for one hour. *Id.* At a later point in the hearing, the ALJ posed two hypothetical questions to the vocational expert who testified at the hearing. First, the expert was asked to assume that Greth had diabetes and loss of vision in one eye, and that medium, heavy, or very heavy work was therefore medically contraindicated, but that light or sedentary work was not contraindicated. Transcript of Hearing at 71, Administrative Record at 107. Based on these assumptions, the expert responded that Greth was capable of performing light or sedentary work. *Id.* 72, Administrative Record at 108. Then, the ALJ asked the vocational expert to "assume that the claimant's total presenting symptoms as described by him" were medically demonstrable. *Id.* 78–79, Administrative Record at 114–15. On the basis of these assumptions, the expert stated that Greth was incapable of performing even light or sedentary work.

*Id.* 79, Administrative Record at 115. He pointed out that Greth *was* capable of performing sheltered employment "where a person could work for two hours and nap for two hours," *id.* 80, Administrative Record at 116, but, as the ALJ noted, sheltered employment does not constitute substantial gainful employment.

The ALJ found that plaintiff was capable of substantial gainful employment, and was therefore ineligible for benefits. Decision of ALJ at 17–18, Administrative Record at 23–24. The Magistrate now urges in his Report that (1) the ALJ found plaintiff to be a credible witness, (2) plaintiff's testimony, if credited, showed that he was incapable of performing even light or sedentary work, and (3) plaintiff is therefore entitled to summary judgment. I cannot accept this conclusion, for I am not persuaded that the ALJ ever resolved the issue of plaintiff's credibility. Only a single opaque paragraph in the ALJ's decision adverts to plaintiff's credibility:

"The undersigned does not doubt the claimant has some pain. The quality, duration and severity of the discomfort are, of course, known only to the claimant. However, while the allegation that there is an impairment cannot be disputed, nevertheless, the remaining functional capacities demonstrated by medical findings of record, adequately negate a finding of significant physical limitation due to structural change and/or significant pain and discomfort. Pain alone is not the anatomical, physiological or psychological evidence required to support vocational incapacity at the statutory level, lacking persuasive indications that the pain results from 'anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.' 20 C.F.R. [404.1501(c)]." Decision of ALJ at 15, Administrative Record at 21.

This language could be taken to mean that the ALJ declined to pass on plaintiff's credibility, acting on the (erroneous) premise

---

1. The Magistrate's Report and Recommendation is attached hereto as an Appendix.

that undocumented subjective reports of even severe pain or discomfort, however credible, are by themselves insufficient to demonstrate entitlement to disability benefits. *See generally Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971); *Parsons v. Secretary of HEW,* No. 76–2619, slip op. at 6–7 (E.D.Pa. Sept. 28, 1977); *Rusnak v. Matthews,* 415 F.Supp. 822, 824 (E.D.Pa. 1976). I am reluctant to address the merits of this case in the absence of an express finding by the ALJ on the credibility of plaintiff's subjective reports of pain and discomfort. *See generally, e. g., Roberts v. Califano,* 439 F.Supp. 188 (E.D.Pa.1977). Accordingly, I will remand this matter for the entry of appropriate findings of fact.

## APPENDIX

### REPORT—RECOMMENDATION
#### SEPTEMBER 19, 1977

## RICHARD A. POWERS, III
## UNITED STATES MAGISTRATE

Plaintiff seeks review of a denial of disability insurance benefits by the Secretary of Health, Education and Welfare (Secretary). 42 U.S.C.A. § 405(g).

Plaintiff originally filed an application for a period of disability and for disability insurance benefits in August 1974, alleging he became unable to work on July 15, 1974 at age thirty-six (36). The application was denied initially and on reconsideration. Thereafter, the plaintiff requested a hearing before an Administrative Law Judge (ALJ) and the hearing was held on August 22, 1975. Plaintiff appeared with counsel, and a vocational expert also appeared to testify. On February 19, 1976, the ALJ found that the plaintiff was not under a disability. The decision of the ALJ became the final decision of the Secretary of Health, Education and Welfare when the Appeals Council approved the decision on May 14, 1976.

The complaint in this case was filed on July 12, 1976, and cross motions for summary judgment are presently pending for disposition. After review of the record, we find that there is not substantial evidence to support the decision of the Secretary and the defendant's motion for summary judgment should be denied and the plaintiff's motion for summary judgment should be granted.

In his decision, the ALJ found that the plaintiff is suffering from diabetes mellitus which has been difficult to control with a weight loss program and insulin. Plaintiff also has a loss of vision in his right eye; degenerative disc disease at L4–L5 and L5–S1 in an advanced degree with arthritis and a narrowing of the L3–L4 interspace, requiring plaintiff to wear a back brace constantly except when he sleeps. Plaintiff also suffers from nervousness which renders him uncomfortable for a short period of time upon meeting strangers. He also has high blood pressure which is now controlled by a weight loss program. Plaintiff is unable to walk without the aid of crutches or a cane, and he has no grip in either hand in which he can turn a screwdriver or wield a hammer to repair anything. Plaintiff has a history of four (4) admissions to the hospital because of diabetes and has had diabetes since 1966. Plaintiff also returns to the hospital monthly since his last hospitalization in August of 1975. The plaintiff is unable to sit for a period longer than one and one-half (1½) hour[1] and is unable to stand for an hour. Because of his back condition, he is unable to sleep in a bed, but must prop himself up on a couch to support his back when he removes his brace at night. Plaintiff is unable to sleep on his back or on his stomach. The plaintiff experiences pain in his back, wrists, elbows and knees and was hospitalized at one time on April 10, 1975 complaining of pain in his right knee. On examination there was a tenderness along the lateral joint line and lateral edge of the patella. He was able to hold his knee in an altitude of forty-five (45) degrees and can continue to one hundred and ten (110) degrees. There was no

---

1. During the hearing before the ALJ which lasted for one (1) hour and forty (40) minutes, the plaintiff got up from his seat four (4) or five (5) times. (tr. 99).

apparent instability, but grinding motion exaggerated the pain.

The plaintiff is obese and, although he has been on a number of low calorie diets, he has been unable to keep his weight under control. At the time of the hearing, he gave his height as five (5) feet, eight (8) inches, and his weight between two hundred (200) and two hundred and five (205) pounds.[2] Because of the plaintiff's back problems and other infirmities, he is unable to bathe his lower extremities and tie his shoes. He requires his wife to perform these functions. In order to pull up his trousers he must lie on the bed and pull them up from a prone position. He only drives a car on rare occasions and he does not work around the house. He has no hobbies except watching television.

Plaintiff was employed as an electrician and, in August 1974 upon the advice of a physician, he terminated this employment because of his diabetes[3] and subsequently entered Penn State University to pursue a course in vocational rehabilitation in order to become a counselor. Plaintiff attends classes for an hour and fifteen (15) minutes, three (3) or four (4) days a week. The plaintiff must stand up periodically during the classes as he cannot sit for too long a time since his legs become numb from inactivity. He takes notes in class, but they are barely legible, and only to him. Plaintiff has no other training than being an electrician. Plaintiff testified as to having pain throughout his body and that he takes several medications, such as meprobamate, inochin, tylenol and a sleeping pill. The plaintiff is considered forty (40) percent disabled by the Veterans Administration and he receives a service connected disability pension and GI subsistence.

In the course of his employment as an electrician, the plaintiff experienced blackouts as a result of his diabetes which caused him to collapse on many occasions. Plain-

tiff also has a history of headaches for three (3) years and takes valium.

In his decision, the ALJ found the plaintiff to be a credible witness. He accepted the fact that the plaintiff had all the various impairments above enumerated and that he had "some pain". However, since the plaintiff, in the ALJ's opinion, did not support his complaints of pain "by medical findings of record", he found that plaintiff's pain was not "significant pain and discomfort". In reaching this conclusion, the ALJ found as follows at tr. 21:

"The undersigned does not doubt the claimant has some pain. The quality, duration and severity of the discomfort are, of course, known only to the claimant. However, while the allegation that there is an impairment cannot be disputed, nevertheless, the remaining functional capacities demonstrated by medical findings of record, adequately negate a finding of significant physical limitation due to structural change and/or significant pain and discomfort. *Pain alone is not the anatomical, physiological or psychological evidence required to support vocational incapacity at the statutory level, lacking persuasive indications that the pain results from 'anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'* 20 C.F.R. 1501(c) [404.1501(c)]." (Emphasis added)

In reaching this conclusion, the ALJ held that the plaintiff's subjective complaints *alone* were insufficient to support a claim for disability. This was error. In *Bittel v. Richardson*, 441 F.2d 1193 (3 Cir. 1971), the Court held that pain unaccompanied by objectively observable symptoms will support a claim for disability benefits. (page 1195). In this case, the ALJ found that because there was no *clinical* observation of *constant* limitation of motion or major joint involvement anywhere in the record, the

---

**2.** This was reduced to one hundred and eighty-eight (188) and one-half (½) pounds on December 16, 1975. (tr. 167, Ex. 20).

**3.** Dr. Lee made such a recommendation on October 10, 1974 before plaintiff's back problems became active. (tr. 151, Ex. 14).

 plaintiff was not entitled to disability benefits. There is evidence in the hospital record that the plaintiff has joint involvement throughout his body accompanied by pain. Yet, the ALJ found that this was not sufficient to establish a disabling impairment function. As noted in *Bittel v. Richardson, id.* 1195, the Secretary's regulations, 20 C.F.R. 405.1502(a), require the determination of disability must be made from "all the facts". This necessarily includes subjective factors as well as clinically observable findings.

The plaintiff established that he could no longer perform his former employment, thus the burden of going forward to establish that the plaintiff could perform other employment shifted to the Secretary.

While we are limited in our review to a determination of whether or not the record as a whole contains substantial evidence to support the decision of the Secretary, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), we cannot escape our duty to scrutinize the record as a whole to determine whether the conclusion reached by the Secretary has a reasonable basis in law. *Hicks v. Gardner*, 393 F.2d 299, 302 (4 Cir. 1968).

At no time during the hearing or in the written decision of the ALJ did he find that the plaintiff was not a credible or believable witness. None of the plaintiff's complaints of pain are contradicted by any of the medical evidence, and there is no evidence from which the ALJ could find that the plaintiff was exaggerating his inability to sit or walk for any appreciable period of time.

The ALJ, in his hypothetical question to the vocational witness, asked him to assume that the combination of all of the plaintiff's impairments would not medically contra-indicate light or sedentary work activity.[4] From this assumption, the vocational witness stated that the plaintiff had a background which would qualify him for work in small appliance repairs, vending machine parts repairs, telephone field repairs; or he could work in a distribution area with an electronics related firm as a salesman, parts man, or counter man in the area.

In another hypothetical question, the vocational witness was asked to assume that all of the plaintiff's medical symptoms could be medically demonstrated from the record. It was the opinion of the vocational witness that the plaintiff would not be able to perform any of the jobs previously listed because they require at least seven and one-half (7½) and eight (8) hour endurance per day on a five (5) day basis. He could only perform such jobs in a sheltered employment where he could work for two (2) hours and nap for two (2) hours. (tr. 115, 116).

The three-fold test for determining disability requires: (1) a medically determinable physical or mental impairment which has or will last at least twelve (12) months; (2) inability to engage in any substantial gainful activity; and (3) the inability must be by reason of the impairment. *Garrett v. Richardson*, 471 F.2d 598, 599–600 (8 Cir. 1972). Before reaching a conclusion that the plaintiff can perform any substantial gainful activity, it is important that common sense be applied to the facts as well as the regulations of the Secretary. Substantial gainful activity is that which is both substantial and gainful and within the plaintiff's capability, *realistically* judged by his education, training and experience. *Yawitz v. Weinberger*, 498 F.2d 956, 959–60 (8 Cir. 1974). It cannot be doubted that the plaintiff in this case is *theoretically* qualified to perform (by his training as an electrician) many of the positions found by the vocational witness to be available to the plaintiff. However, there is not a scintilla of evidence in this record to support the conclusion that the plaintiff has the capability to stand, walk or sit for any appreciable length of time, or that he can grasp a tool

---

4. This *assumption* was transformed by the ALJ into testimony by the witness that plaintiff

could in fact adequately perform such jobs. (tr. 20).

with the strength necessary to perform the repair jobs enumerated by the vocational witness. His frequent hospitalizations and blackouts all militate against regular employment.[5] The mere fact that he has made an admirable attempt to rehabilitate himself by attending college in spite of his many impairments and under the most distressing circumstances, should not be held against him as indicating his unavailability to work.[6] The very course of study he is pursuing, Rehabilitative Counseling, indicates plaintiff is attempting to help himself and others similarly situated. The college situation is an elective activity being pursued by the plaintiff whereby he does not have to stand or sit for more than an hour and fifteen (15) minutes, and cannot be compared with any employment situation where the plaintiff would not have the freedom of choice to leave after such a brief interval of work. The plaintiff has demonstrated that he possesses an abundance of vocational motivation. *Brinker v. Weinberger,* 522 F.2d 13 (8 Cir. 1975). The fact that he is seeking vocational rehabilitation should inure to his benefit and not to his detriment. *Alexander v. Weinberger,* 536 F.2d 779 (8 Cir. 1976).

In summary, the combination of the medical evidence and the plaintiff's subjective symptomatology all support his claim that he is totally disabled and unable to perform any substantial gainful activity. *Yawitz v. Weinberger, supra.*

Accordingly, we make the following

## RECOMMENDATION

Now, this 19th day of September, 1977, IT IS RESPECTFULLY RECOMMENDED that the plaintiff's motion for summary judgment should be GRANTED, and the defendant's motion for summary judgment should be DENIED.

---

5. See the medical report of Dr. Suarez of the Veterans Administration Hospital dated February 25, 1975, wherein it is stated the plaintiff is disabled both for his lumbar disc disease and diabetes. (tr. 162).

6. Decision of the ALJ. (tr. 21).