Ella M. McCRAY

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.

Civ. A. No. 79–213–A.

United States District Court,
M. D. Louisiana.

Jan. 14, 1980.

Leila S. Withers, Withers & Withers, Baton Rouge, La., for plaintiff.

Donald L. Beckner, U. S. Atty., James Stanley Lemelle, Asst. U. S. Atty., M. D. Louisiana, Baton Rouge, La., for defendant; John M. Stokes, Regional Atty., Paula Mastropieri-Billingsley, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, Dallas, Tex., of counsel.

WEST, District Judge:

Ella M. McCray has applied to the Social Security Administration for disabled widow's insurance benefits and Supplemental Security Income. Her application was denied on grounds she was not disabled within the meaning of the applicable statute. She brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the agency's decision.

McCray is a fifty-seven year old woman who resides in Jackson, Louisiana. She was reared on a farm, which she left at the age of eighteen to accept a position as a household servant, which she kept for twelve years. For the succeeding nine years she was employed as a public school lunchroom worker and cook. Beginning in 1963, McCray worked in the housekeeping department of a geriatric hospital, which employment she left in February of 1977 because of back pain.

In May, 1977, McCray had a herniated disc surgically removed. She has not worked since that time. She takes daily sitz baths and exercise as well as pain relievers and muscle relaxants to relieve her back pain. She testified that approximately three months prior to the hearing before the Administrative Law Judge, she ceased taking empirin for pain and was switched to tylenol. She was still, however, taking muscle relaxants.

She complained of pain in her left leg and was observed at the hearing to sit down and rise gingerly, though it was noted that she sat through the lengthy proceedings without signs of stress and walked briskly from the room at their conclusion.

Of less serious character than her back disorder but to be considered with it in determining whether McCray is disabled is a radical mastectomy performed in 1965 from which McCray claims a residual stiffness and weakness of the left arm; claimed arthritic pains in her right hand and shoulder, though tests reveal no signs of arthritis; and bladder trouble.

The Administrative Law Judge took the testimony of McCray and her daughter, Loretta Mathews, and found as facts that McCray could not, because of her age and her back impairment, return to her former work at the geriatric hospital, which involved heavy labor. However, it was specifically found that McCray was able to do light work, i. e. "work which entails lifting 20 lbs. maximum, with frequent lifting or carrying of objects weighing up to 10 lbs., walking and standing to a significant degree, or sitting most of the time with a degree of pushing and pulling of arm and leg controls." Suggested jobs which it was held McCray could perform were "household domestic, sitter for children and the elderly, cafeteria server, and school crossing guard."

Claimant argues on appeal that, having proved that she was unable to return to her former employment as a housekeeper, the burden of proof shifted to the Government to show that there was other work, existing in the national economy, which she could do, and that the Government failed to introduce any evidence to meet this burden, the Administrative Law Judge having merely taken notice that there were certain specific jobs in the category of light labor which she could perform.

Since we find that this argument has merit, we remand the case to the Social Security Administration for further proceedings consistent with our remarks below.

Cases are legion which repeat that it lies with the party claiming benefits under the Social Security Act to show his entitlement; *Turner v. Califano*, 563 F.2d 669 (CA 5—1977), *Kirkland v. Weinberger*, 480 F.2d 46 (CA 5—1973), *Hart v. Finch*, 440 F.2d 1340 (CA 5—1971), *Aldridge v. Celebrezze*, 339 F.2d 190 (CA 5—1964).

However, proof of entitlement to Social Security Disability Benefits presents a special problem for applicants who, under a strict application of the above principle, would be confronted with the well-nigh impossible task of proving a negative, i. e., that there was no form of substantial gainful employment available in the national economy which they are capable of undertaking.

■ Therefore it has been held, that in these cases, the claimant need only prove that he is unable to perform the duties of the job he had previously held, and, having done so, it then is up to the Government to prove that there is other work available which he is able to do.

. . . prima facie case of disability to perform her customary occupation due to a medical condition shifted the burden of going forward from her to the Secretary. *Taylor v. Weinberger*, 512 F.2d 664 (CA 4—1975).

This rule has been expressly adopted by at least five of the Circuit Courts of Appeals; *Hernandez v. Weinberger*, 493 F.2d 1120 (CA 1—1974), *Meneses v. Secretary of H.E.W.*, 143 U.S.App.D.C. 81, 442 F.2d 803 (CA DC—1971), *Vaughn v. Finch*, 431 F.2d 997 (CA 6—1970), and *Stark v. Weinberger*, 497 F.2d 1092 (CA 7—1974). It has been stated to be the law by District Courts in three other Circuits; 2nd Cir.—*Kenny v. Weinberger*, 417 F.Supp. 393 (ED NY—1976), *Grable v. Sec. of H.E.W.*, 442 F.Supp. 465 (WD NY—1977); 3rd Cir.—*Greth v. Califano*, 438 F.Supp. 1270 (ED Penn.—1977); 9th Cir.—*Lightfoot v. Mathews*, 430 F.Supp. 620 (ND Cal.—1977), *Chism v. Sec. of H.E.W.*, 457 F.Supp. 547 (CD Cal.—1978). Though the Fifth Circuit has never adopted the rule, research does not reveal that it has ever been expressly considered by any Court of this Circuit, nor that it has been considered and rejected by any Court of the United States. It is the opinion of this Court that the rule is a sound and fair one and we adopt it for purposes of our review here.

■ Since the Administrative Law Judge found that the claimant was unable to return to work in the geriatric hospital, the shift of the burden of proof provided for by the rule just discussed occurred. If, after claimant had met her initial burden the finding of the agency was to be against her, it was the responsibility of the Administrative Law Judge to state, in the context of the hearing itself, what items of evidence or facts subject to administrative notice inclined him to so rule. The claimant would then have had an opportunity to answer that evidence and the hearing would have served its purpose.

■ Instead, in the actual case, the issues which finally were decisive were never clearly delineated at the hearing. The hearing focused vaguely on the severity of claimant's pain and the scope of her normal daily activities, whether she cooked her own meals, did housework, etc. But the decision of the agency, as it finally appeared, involved specific findings that the claimant was competent to do particular work such as cafeteria worker, crossing guard, or child care, and that the disabilities proved did not match with any of those on the official list of disorders in Subpart P, Appendix 1 of 20 C.F.R. 404.1504.

The Administrative Law Judge ought to have heard argument on each of these specific issues, i. e., Was claimant able to perform the duties of a crossing guard? Is any item on the official list of disabilities substantially equivalent to the disabilities proved by the claimant? etc. For instance, the decision of the ALJ contains the finding that

. . . the medical evidence shows that the claimant's conditions are not attended by clinical findings that meet or equal in severity the requirements of any of the disorders listed in the Appendix to Subpart P of Regulations No. 4 or the corresponding provisions of Regulations No. 16.

This is a most crucial finding. Yet the hearing never concerned itself with the official list of disorders in question. The Appendix mentioned covers 23 closely printed pages of the Code of Federal Regulations. The portion with the most obvious relevance to the present case appears at 20 C.F.R. Section 404 at page 358 and lists as a disability within the meaning of the statute in question a herniated nucleus pulposus

with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Which of these necessary elements was found missing by the ALJ the record does not reveal. Certainly, the presence or absence of any of them was not a subject of argument at the hearing.

Doubtless the problem here springs in large part from the difficulty experienced by the ALJ in combining the offices of judge and attorney for the agency. There is a real danger that, if the ALJ states in the hearing arguments against the applicant's claim, the applicant will conclude that he is taking part against her and that she is being treated unfairly. To some extent this tension between roles is inevitable, given the structure of these administrative hearings. It can, however, be lessened considerably by employing witnesses such as vocational experts, in appropriate cases, to frame the issue against the claimant.

> Ordinarily, the testimony of a vocational expert is required in order to support a finding that alternate jobs which the claimant can do exist in the national economy. *Smith v. Califano*, 592 F.2d 1235, 1236 (CA 4—1976).

At any rate, it cannot be said that the essentials of a fair hearing have been preserved where a claimant comes forward and meets her initial burden of proof and is sent home, only to be informed later that she was adequately rebutted by evidence never held up to her attention.

In the most recent supplement to his Administrative Law Treatise, Professor Kenneth Culp Davis states,

> Two main facts about BHA [Bureau of Hearings and Appeals of the Social Security Administration] hearings are that the ALJ has the affirmative responsibility for developing facts on both sides, and that claimants are unrepresented by counsel in about 70% of the cases.

> What can be learned by close examination of the official notice problem of BHA is that the focal point has to be the adequacy of procedural protection when facts are noticed; the crucial question is

whether or not the claimant is given sufficient opportunity to meet the noticed facts. *Davis, Administrative Law of The Seventies*, 1978 Supp. p. 109.

Here, the applicant was represented by an attorney, a circumstance that ought to greatly increase the usefulness and efficiency of the proceedings. But, the attorney's skills were wasted, because the rationale upon which the Government rested its decision to deny benefits was never presented for argument.

Professor Davis further notes that in June, 1978, the Administrative Conference adopted recommendation 78–2, providing:

> In the absence of regulations structuring the administrative law judge's discretion when evaluating vocational factors, administrative law judges should take official notice at the hearing of vocational facts that can be established by widely recognized documentary sources or on the basis of agency experience. *Davis*, supra, at p. 109.

Note the crucial words *at the hearing*. Facts not in evidence should not be noticed ex parte, as it were. Even facts in evidence ought not be given decisive weight where they are buried among a mass of exhibits and reports and have never been the subject of consideration by the adverse parties, either in brief or at a hearing.

In summary, we conclude that where the claimant in a Social Security Disability case establishes inability to resume his former occupation, the burden of proof shifts to the Secretary of Health, Education and Welfare to prove that there is some type of substantial gainful employment available in the national economy, which the claimant is able to perform. Often it will be desirable to employ the testimony of a vocational expert to this end. Such testimony will not always be necessary, however, since it will often be possible for the Secretary to meet his burden by taking administrative notice of vocational facts which are common knowledge or which are familiar to the experienced personnel of the agency, *Chavies v. Finch*, 443 F.2d 356 (CA 9—1971) and *McLamore v. Weinberger*, 538 F.2d 572 (CA

**132**

4—1976). Where the Secretary seeks to meet his burden of proof by taking administrative notice of such facts, however, it is absolutely essential that the claimant have an opportunity to answer them, see Administrative Conference Recommendation 78–2, above. Because failure of the Secretary to properly meet his burden of proof vitiated the usefulness of the hearing resulting in a record too incomplete to preserve claimant's right of review, we remand this case to the Secretary for a new hearing.

Finally, we note that the failure of the parties below to adequately frame and present crucial issues for hearing and argument only began a pattern that was continued on appeal of the matter to this Court.

If this Court has misstated the law on any of the interesting points discussed above, it is likely because it has only had the benefit of claimant's argument, leavened by such research as it was able to do independently. The eloquent fifteen page brief filed by the Government shows no sign that its author ever read the claimant's brief. Evidently the Government anticipated an appeal based on all the usual grounds, in what had all the earmarks of a completely routine case, and prepared its argument accordingly. Claimant elected to appeal on other grounds.

Our whole adjudicatory system will be rendered useless unless the participants in its processes speak clearly and to the point; listen to one another carefully; and respond clearly and to the point. True facts and correct law only emerge from the dialectic of argument and counter-argument. The parties to this litigation have been talking past one another.

Judgment will be entered accordingly.