Eva M. RIVERS, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 81–1413.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1982.

---

North Central Texas Legal Services, Roger Gette, John G. Heike, Dallas, Tex., for plaintiff-appellant.

James Rolfe, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., Gabriel L. Imperato, Attorney, Dept. of Health and Human Services, Baltimore, Md., for defendant-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiff-Appellant Eva M. Rivers appeals from a judgment of the district court affirming the Secretary of Health and Human Services' decision denying her social security disability benefits. Because we find no merit in Rivers' contentions on appeal, we affirm the judgment of the district court.

### I. Facts and Procedures Below

Eva Rivers, age forty-four, was employed as a cook in 1978. She was able to read and write and had worked as a cook, bus person, dishwasher and maid. On November 1, 1978, she suffered a back injury in a fall at work. The injury resulted in constant pain in the lower back which radiated down the left leg. She experienced numbness in her fingers and had difficulty picking up things because of the injury. She wore a back brace and took medication to help relieve the pain. She had difficulty remaining in one position for any length of time, in sleeping, in doing any housework and was most comfortable sitting when her back was "rested up against something." She also had other medical problems, taking daily insulin injections for chronic diabetes and suffering, at times, from hypertension.

These circumstances and her alleged inability to work led her to seek social security disability insurance benefits and supplemental income benefits in March, 1979.[1] The request was initially and upon reconsideration denied by the Texas Rehabilitation Commission, the state contract agency empowered to evaluate claims for social security benefits. Rivers then requested a hearing by an administrative law judge (the "ALJ"). At the hearing, Rivers testified that she had trouble sleeping and sitting. A friend testified that Rivers could do no housework, had trouble getting up after being seated, could not lift anything and had complained of continuing pain.

Additionally, written reports of Rivers' injuries, diagnosis, treatment and prognosis

---

1. The relevant laws and regulations governing a claim for disability benefits are identical to the laws and regulations governing a claim for supplemental income benefits. *See* 20 C.F.R. §§ 416.901 *et seq.* (1982); *McCoy v. Schweiker*, 683 F.2d 1138, 1141 n.3 (8th Cir., 1982). We thus treat the two claims together.

were introduced into evidence. The reports were set forth in detail in the decision of the ALJ. Briefly, those reports showed that subsequent to the 1978 fall Rivers underwent extensive medical examinations and various treatment because of continuing back pain. Several reports assessing Rivers' medical condition and capacity to perform work were prepared. Dr. Paul Goodfried, an orthopedic surgeon, one of Rivers' examining and treating physicians, prepared an extensive report, including an assessment, for the Social Security Administration, of Rivers' ability to perform in a work setting, described in the parlance used by the Social Security Administration as her "residual functional capacity." [2] He found her capable, in an eight-hour work day, of standing and walking for one to two hours, sitting for three to four hours and lifting and carrying ten pounds occasionally. She could bend occasionally but could not stoop, kneel, squat, crouch, crawl or climb. Dr. David Blacklock, a medical advisor with the Texas Rehabilitation Commission, prepared an assessment of Rivers' residual functional capacity from a review of the record evidence (not an examination) on July 23, 1979. He found Rivers capable of standing and walking for eight hours, sitting for eight hours, and lifting and carrying 25 pounds frequently and 50 pounds occasionally. She had full use of her hands, fingers and feet and could occasionally bend, stoop, kneel, squat, crouch, crawl, and climb.

Subsequent to the hearing before the ALJ, Rivers submitted additional medical reports detailing her treatment for the back pain and noting surgery for an abcess of the thigh. Additionally, at the request of the ALJ, Rivers was examined by Dr. Jack Woolf, a neurosurgeon. He prepared an assessment of residual functional capacity in which he found Rivers capable of sitting and standing two hours at a time, standing for two hours and walking for one hour. Among other findings, she was found capable of lifting six to ten pounds occasionally.

At a supplemental hearing Dr. Woolf testified regarding Rivers' impairments. He stated that, in preparation of the assessment of Rivers' residual functional capacity, he considered her medical condition and her subjective complaints. He was cross-examined by Rivers' attorney.

Subsequent to the supplemental hearing, a psychological evaluation was submitted by the Texas Rehabilitation Commission. The evaluation concluded that, as to intelligence, Rivers functioned in the dull normal range. The thrust of the evaluation was that Rivers could be trained for some type of office work where she did not have to sit for too long a period of time.

On March 31, 1980, the ALJ issued his decision. He first set forth the applicable Social Security law and regulations,[3] and, as previously noted, set forth the relevant medical evidence. The ALJ stated that "the issue before the administrative law

**2.** Residual functional capacity is defined as: Your residual functional capacity is what you can still do despite your limitations. If you have more than one impairment, we will consider all of your impairments of which we are aware. We consider your capacity for various functions as described in the following paragraphs; (b) physical abilities; (c) mental impairments, and (d) other impairments. *Residual functional capacity is a medical assessment.* However, it may include descriptions (even your own) of limitations that go beyond the symptoms that are important in the diagnosis and treatment of your medical condition. Observations of your work limitations in addition to those usually made during formal medical examinations may also be used. These descriptions and observations, when used, must be considered along with the rest of your medical record to enable us to decide to what extent your impairment keeps you from performing particular work activities. This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment.
20 C.F.R. § 404.1545 (1982) (emphasis added).

**3.** The pertinent law is found at 42 U.S.C. §§ 401 *et seq.* The relevant regulations are set forth at 20 C.F.R. §§ 404.1503–64 and Appendix 2 (1982).

judge is whether the claimant's impairments prevent her from performing her usual work; and, if so, whether those impairments prevent her from performing other kinds of substantial gainful activity."

The ALJ then evaluated the evidence, stating in relevant part:

The medical evidence reveals that the claimant's impairments are chronic lumbosacral strain, obesity, diabetes mellitus, L5 nerve root irritation and borderline hypertension. The most recent medical evidence indicates that the claimant's back condition has improved, and the claimant's treating physician indicated in his assessment of the claimant's residual functional capacity prepared on July 23, 1979, indicates the claimant capable of doing light to medium work.... While the diabetes mellitus was a contributing factor to the formation of the abscess which was removed from the claimant's right thigh, the diabetes is controlled with insulin and there has been no significant end organ damage as a result thereof, nor has there been any evidence of end organ damage as a result of hypertension. Dr. Goodfried's indication in his medical report of July 6, 1979, that with the claimant's present complaints she is unable to go back into the work force, is not controlling as this opinion is based solely on the claimant's subjective complaints. She still had the residual functional capacity to perform sedentary work.... Furthermore, Dr. Woolf's impression was that the claimant had chronic low back pain with left sciatica and ordisiogenic disease which with her other impairments did not prevent her from engaging in sedentary work.

After making this medical determination of Rivers' residual functional capacity the ALJ examined the physical requirements of the five classifications of work as established by the Social Security Administration[4] and concluded:

After reviewing all of the evidence of record, it is apparent that the claimant's impairments restrict her to the performance of *sedentary work* (which is defined by Regulations 404.1510(b) and 416.910(b) as work involving lifting 10 pounds maximum, occasionally lifting or carrying such articles as dockets, ledgers, and small tools, involving sitting, however, a certain amount of walking or standing is often necessary).

Finally the ALJ considered the vocational factors of age, education and work experience considered to be pertinent to the ultimate determination whether Rivers could perform substantial gainful activity:

Furthermore, the evidence shows that the claimant is 45 years old (which is defined as a younger individual by Regulations 404.1506(b) and 416.906(b)), has a tenth grade education (which is defined as a limited education by Regulations 404.1507(d) and 416.907(d)), and has done only unskilled work. The evidence further supports a finding that the claimant has the maximum sustained work capacity to perform sedentary work as long as no heavy lifting is involved.

The ALJ determined that Rivers' individual vocational characteristics and capacity to perform sedentary work *coincided* with the characteristics set forth in Medical-Vocational Guidelines (the "guidelines") established by the Social Security Administration,[5] 20 C.F.R. §§ 404.1501–1569 (1982), to aid the ALJ's determination of disability. The ALJ concluded that the following rule, set forth in the guidelines, should be used to determine whether Rivers was disabled.

---

**4.** The physical exertion requirements of the classifications of work are "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. § 404.1567 (1982).

**5.** See Part II, *infra*, for a discussion of the methodology prescribed by the Medical-Vocational Guidelines.

Table No. 1

Residual Functional Capacity: Maximum Sustained Work
Capability Limited to Sedentary Work as a Result of
Severe Medically Determinable Impairment(s)

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.18 | Younger individual age 45–49 | Limited or less — at least literate and able to communicate in English | Unskilled or none | Not disabled |

Rule 201.18, Table No. 1, 20 C.F.R. Appendix 2. The application of this rule, as shown above, directed a finding that Rivers was "not disabled." Notably,

> [T]he *existence* of [a] job in the national economy [was] reflected in the [ALJ Decision] shown by the rules; *i.e.*, in promulgating the rules, administrative notice [had] been taken of the numbers of unskilled jobs that exist throughout the national economy at the [sedentary level].

20 C.F.R. Appendix 2, § 200.00(b) (1982).

Subsequent to the ALJ decision, Rivers requested review of the decision by the Appeals Council of the Social Security Administration. She stated as a basis for the appeal:

> She submits as additional evidence her declaration rebutting any administratively noticed "fact" which the ALJ was required to make under the Regulations 404.1513 and 416.913 and Rule 201.18, Table No. 1 of Appendix Z, Subparts P and I of Regulations No. 4 and 16.
>
> The decision clearly implicates an issue of broad policy which will affect the general public interest. The use of such regulations, where a vocational expert was requested by an indigent claimant, is not supported by substantial evidence *in the record*. Ms. Rivers was never apprised at either hearing of the noticed facts so as to have a meaningful opportunity to rebut them. The use of such a procedure would violate the Social Security Act for it effectively requires her to negative every conceivable sedentary occupation in the national economy. This creates seri-

ous due process problems with indigent claimants.

> The decision by the ALJ is absolutely clear where it quotes that these regulations "direct a conclusion" where no substantial evidence exists in the record. As such it violates the claimant's rights to adjudication by an independent or quasi-independent hearing official. See, *Nash v. Califano* [613 F.2d 10], (2d Cir. 1980); 5 U.S.C. §§ 556–559 (1970). If such administrative notice is to be taken the finding of "limited education" is refuted by the study of the Secretary showing grade level performance of southern and southwestern blacks in metropolitan and non-metropolitan areas. Ms. Rivers incorporates her argument to the ALJ by reference.

The Appeals Council, after a review of Rivers' contentions on appeal, the record before the ALJ and the applicable laws and regulations, denied review of the ALJ decision. The decision thus became the final decision of the Secretary.

Rivers appealed the Secretary's decision to the district court, claiming the decision was not supported by substantial evidence, and:

> That Defendant unlawfully applied new vocational regulations, entitled Medical-Vocational Guidelines, contained in Appendix 2, subpart "P" of Title 20, Code of Federal Regulations, Sections 404, 43 Federal Register 55349–55379 (1978) to Plaintiff's application.
>
> . . . .

That the application of the above Medical-Vocational Guidelines to the extent that they foreclose testimony of a vocational expert at the Plaintiff's administrative hearing violates both the Social Security Act and the due process clause of the Fifth Amendment to the United States Constitution.

Rivers and the Secretary filed motions for summary judgment. Rivers identified the issues as being:

First, may the Secretary satisfy her burden of proof by applying standardized vocational profiles to claimants where the Secretary takes administrative notice of the job "requirements" and not merely the "existence" of these jobs? Second, may the Secretary interfere with the quasi-judicial independence of the Administrative Law Judges [hereinafter referred to as ALJs] in compelling a specific decision where certain alleged "controlling" facts are elicited?

Rivers also alleged that no substantial evidence supported the decision of the ALJ. The Secretary stated in the motion for summary judgment that the only question was whether there was substantial evidence to support the decision. Thus the question before the district court was whether the ALJ could, consistent with the requirements of the Social Security Act (the "Act") and the due process clause of the fifth amendment, after evaluating testimony relating to Rivers' individualized medical and vocational factors, apply a specific rule in which administrative notice of the existence of jobs in the economy had been taken to determine that Rivers was not disabled.

The district court held that administrative notice of the existence of jobs taken in the guidelines did not violate Rivers' right to due process of law. The court found that Rivers had been given notice that the guidelines (and the concommitant administrative notice of the existence of jobs) would be applied and held that Rivers had been given the opportunity to controvert any administratively noticed facts. The court also held that there was substantial evidence to support the finding that Rivers could engage in sedentary work.

Rivers appeals to this court, stating the issues as follows:

(1) Reliance upon vocational profiles to determine that the claimant can do gainful activity other than her former work violates the Social Security Act and the due process clause of the fifth amendment to the United States Constitution;

(2) The findings of the Secretary violate the precepts of "structural due process;"

(3) The district court erred in relying exclusively upon unpublished circuit authority;

(4) The decision of the Secretary is not supported by substantial evidence.

## II. The History and Methodology of the Medical-Vocational Guidelines

In order to address the issues raised on appeal it is first necessary to set forth the Act's definition of disability, the general procedure to be utilized for determining whether a claimant is disabled, the specific methodology used prior to 1979 to accomplish the determination of disability and the methodology established under the 1979 guidelines for such a determination.

A disability is defined in the Act as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months

42 U.S.C. § 423(d)(1)(A). The Act further provides that:

an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.*

The general procedure for determining whether a claimant is disabled under the Act has been summarized:

> One seeking a period of disability or disability insurance benefits must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . . 42 U.S.C. § 423(d)(1)(A). The burden is upon the claimant to demonstrate that he is no longer capable of performing his past work. *Wilkinson v. Schweiker,* 640 F.2d 743, 744 (5th Cir. 1981). If the claimant satisfies his burden, it then shifts to the Secretary to show that the claimant is capable of engaging in some type of substantial gainful activity. *Ferguson v. Schweiker,* 641 F.2d 243, 246 (5th Cir. 1981).

*Perez v. Schweiker,* 653 F.2d 997, 999 (5th Cir. 1981); *Accord Western v. Harris,* 633 F.2d 1204, 1206 (5th Cir. 1981); *Brenem v. Harris,* 621 F.2d 688, 689 (5th Cir. 1980); *Johnson v. Harris,* 612 F.2d 993, 997 (5th Cir. 1980).

Prior to 1979 this procedure to determine disability, expressed in terms of the shifting of the burden of persuasion from the claimant to the Secretary, had been accomplished by an *ad hoc* type of determination in which, after the claimant had established that he or she could not perform his or her former job, the Secretary, in addition to presenting medical testimony relevant to the claimant's ability to perform work, would often present vocational expert testimony on the question whether "a person of [claimant's] age, experience, education and impairments could perform work which existed in the national economy." *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir. 1981). The claimant would then present testimony to contradict this assessment of his or her age, experience, education and impairments.

The Social Security Administration in 1979, sought to systematize this methodology through the adoption and implementation of the guidelines.[6] A detailed description of this new method has been stated by this court:

> 20 C.F.R. § 404.1503 provides the Secretary with the sequential steps necessary to render a finding regarding disability. First, if a claimant is presently involved in substantial gainful activity, the inquiry ceases and the claimant is declared not disabled. 20 C.F.R. § 404.1503(b). If claimant does not have a severe physical or mental impairment, the claimant is considered not disabled. § 404.1503(c). If an individual's impairment meets the durational requirement of at least twelve months found in 42 U.S.C. § 423(d)(1)(A) and is listed in appendix 1 of the regulations or is determined to be the medical equivalent of a listed impairment, the claimant is considered disabled. § 404.-1503(d). If a finding of disability *vel non* cannot be determined by these previous steps, but the claimant does have a severe impairment, the Secretary must evaluate the claimant's residual functional capacity. Residual functional capacity is the degree to which an individual can function limited by the physical or mental impairment. § 404.1505(a). The Secretary must then evaluate the physical and mental demands of the claimant's past relevant work. § 404.1503(e). If the claimant can meet the demands of his past relevant work, there must be a finding of no disability. § 404.1503(e). If, however, the claimant cannot perform past relevant work because of a severe impairment, but is capable of meeting a significant number of jobs in the national economy and the claimant is able to adjust to these different types of work, then there is no disability. § 404.1503(f). If the claimant cannot adjust to such

---

**6.** See note 3, *supra.*

different work, then he is considered to be under a disability. *Id.*

If a claimant is found unable to perform in his past relevant work, the Secretary must examine the claimant's age, education and work experience as well as his functional limitations. § 404.1504(c). The Secretary may determine a claimant's residual functional capacity solely upon relevant medical findings. § 404.1505(a). If these findings are insufficient for an adequate assessment, however, other factors may be considered. *Id.*

Once the Secretary has reached this point in the sequential evaluation, he then refers to certain tables found within the second appendix to the regulations. 20 C.F.R. subpart P, app. 2, §§ 200.00–204.00 (1980). These tables are broken down into levels of residual functional capacity. Table 1 covers those individuals who are capable of performing sedentary work as defined in § 404.1510(b). Table 2 covers individuals who are capable of performing light work. Table 3 covers individuals capable of working at a medium work level as defined in § 404.1511(d).

*Perez v. Schweiker*, 653 F.2d at 999.

In summary, the ALJ determines a claimant's residual functional capacity, age, education and work experience. If the residual functional capacity, age, education and work experience coincide with those listed in the guidelines, the guidelines themselves direct, in the form of application of a rule found in the appropriate table,[7] the "ultimate conclusion of whether a claimant is capable of other substantial gainful work in the national economy." *Broz v. Schweiker*, 677 F.2d 1351, 1355 (11th Cir. 1982).

> Regulation 404.1513 provides that when the findings of fact made as to all factors (age, education, transferability of skills, work experience, and residual functional capacity) coincide with the criteria of a rule in Appendix 2, that rule directs a conclusion as to whether the claimant is "disabled" or "not disabled."

*Salinas v. Schweiker*, 662 F.2d 345, 348, 349 (5th Cir. 1981).

> These guidelines are not to be utilized, however, if limitations other than exertional capacity (the ability to stand, lift, push, pull, handle, etc.) are found:
>
> > If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities—for example, sensory impairments such as skin or respiratory sensitivity and mental or emotional impairments—then [the rules set forth in the tables] do not apply. *Id.* at § 200.00(e).

*Broz v. Schweiker*, 677 F.2d at 1356 (footnote omitted).

As we concluded in *Perez* :

> The regulations themselves caution against using the guidelines in the appendix except in limited circumstances. In § 200.–99(a) of appendix 2, it states that the guidelines found in the tables may not be used if the claimant is considered disabled by reason of the medical evidence alone under § 404.1504(b). *Additionally and even more importantly, before the guidelines may be used to determine the existence of a disability, every criterion listed in the guidelines, including residual functional capacity, age, education and previous work experience, must coincide with the claimant's situation.* App. 2 § 200.00(a). *If any one criterion does not coincide, the guidelines may not be used. Id.* If the guidelines are not useable, then the Secretary must refer back to the text of the regulations and give full consideration to all of the relevant factors in the case. *Id.*

*Perez v. Schweiker*, 653 F.2d at 1001 (emphasis added).

Notably these guidelines do not identify specific jobs that are available in the national economy for a person having the medical and vocational traits set forth in the guidelines, nor do these guidelines require vocational testimony to determine

---

**7.** For an example of a rule to be utilized when a claimant can perform sedentary work, see text p. 1149.

what specific jobs the claimant, with his or her vocational profile, can perform if the claimant's vocational profile is identical to the characteristics set forth in the guidelines. Rather, the Secretary, in the rule-making process in which the guidelines have been developed "has taken administrative notice of the existence of many jobs in the national economy." *Torres v. Schweiker*, 677 F.2d 167, 168 (1st Cir., 1982). Thus the determination of "not disabled" under the guidelines, while based on the individualized findings relating to residual functional capacity, age, education and work experience, is also premised on administrative notice that jobs exist in the national economy. 20 C.F.R. Appendix 2, § 200.00(a) (1982) ("The existence of jobs in the national economy is reflected in the Decisions shown in the rules; *i.e.*, in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and and very heavy)").

In summary, the guidelines set forth a new methodology to satisfy the Secretary's burden of persuasion to show that a claimant can perform substantial gainful activity. This methodology effects a change from pre-guideline methodology in which the Secretary relied upon rather specific direct vocational testimony to carry his burden of persuasion to one whereby the Secretary attempts to sustain the burden by a process in which individualized medical and vocational factors are identified; and if these factors coincide with established characteristics, the individual is determined, by application of a standardized rule, to be disabled (or not disabled). The existence of jobs (or the lack of such jobs) requiring (or allowing for) those specific medical and vocational factors has been previously identified.

### III. Issues Before This Court

Rivers' complaints relating to application of the guidelines to her claim for benefits have varied as she has appeared before the administrative and judicial tribunals. We thus believe it is worthwhile to clearly articulate the legal arguments on which she bases her claim that the Secretary's decision should be reversed. Rivers, before the Appeals Council, seemed to allege that denial of the opportunity for her to rebut the administratively noticed existence of jobs was impermissible under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 556(e);[8] before the district court the complaint seemed to be lack of testimony, at the administrative hearing, of a vocational expert; in her initial brief on appeal Rivers claimed that failure to provide direct vocational testimony was impermissible under the Act; in her reply brief, she claimed that it is not direct vocational testimony which is required, rather a meaningful opportunity to rebut "administrative notice of adjudicative facts." Notably, in neither of her briefs on appeal does Rivers mention the APA or its requirements relating to the opportunity to rebut administratively noticed facts. Finally, at oral argument, Rivers' counsel stated that the issue was whether Rivers was entitled to and given the opportunity to rebut the medical assessment of her "residual functional capacity" (see n.2, *supra*), that she was capable of performing sedentary work. She claims that she and her counsel were under the impression that they were to present evidence only on the question whether she could perform "medium" work[9] and were prepared only on this question. This latter articulation of the issue on appeal seems to

---

**8.** The Administrative Procedure Act provides, in pertinent part:

When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

5 U.S.C. § 556(e).

**9.** Medium work is described as:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c) (1982).

focus on the question whether there was substantial evidence of Rivers' ability to do sedentary work and whether Rivers had the opportunity to rebut the *medical* testimony which went to this determination of her capacity. As articulated by Rivers' counsel at oral argument, that question is materially different than those questions relating to violations of the Act, the APA and the due process clause of the fifth amendment raised in the briefs.

Upon a review of the pleadings, the transcript of the two hearings before the ALJ, the briefs on appeal and the oral argument, it appears that Rivers raises several allegations relating to the guidelines. She alleges that use of the guidelines and the administrative notice of the existence of jobs implicit in those guidelines is incompatible with the Secretary's burden of persuasion under the Act to show that a claimant can perform gainful activity. Specifically, Rivers asserts that the Act, as construed by this court, requires, in order for the Secretary to meet his burden, specific vocational testimony and the opportunity for rebuttal by the claimant of the specific job requirements established by that testimony. Rivers also asserts that the guidelines violate the APA due to lack of opportunity to rebut the administrative notice of the existence of jobs in the national economy.[10] Finally she claims violation of the due process clause of the fifth amendment due to lack of notice that administrative notice of the existence of jobs would be taken. It is in this posture that we address Rivers' claims.[11]

**10.** While Rivers did not explicitly challenge the use of the guidelines under the APA, it is clear that her description of the alleged infirmity, the lack of opportunity to rebut administratively noticed facts, is an issue arising under the APA. See 5 U.S.C. § 556(e). Although arguably this issue has not been effectively raised on appeal, we find that Rivers' continual references to "appropriate administrative procedures" implicitly raises the question of rebuttal as warranted under the APA. Thus the determination of the APA issue is necessary for a complete and final adjudication of the claims before us.

### IV. The Requirements of the Social Security Act

Rivers claims that the Act requires that the Secretary's burden of persuasion to show that there is gainful employment in the economy can "*only* be satisfied by the presentation of direct vocational testimony." This assertion was inaccurate under our pre-guideline case law, *Fruge v. Harris*, 631 F.2d 1244, 1247 (5th Cir. 1980) ("It is permissible *for an ALJ* to take administrative notice that certain jobs are light and sedentary and exist in the national economy.") (emphasis added), and has been clearly foreclosed by our decisions subsequent to the adoption of the guidelines:

Although the Secretary *may* decide to use a vocational expert to establish the existence of work in the national economy that an applicant is capable of performing, it is by no means necessary. The Fourth Circuit has recently upheld the use of these vocational regulations by the Secretary in lieu of calling a vocational expert to testify. *Frady v. Harris*, 646 F.2d 143, 144–45 (4th Cir. 1981). In addition, the most recent regulations, albeit not applicable to the time period involved in this case, explicitly empower the Secretary to use his discretion in employing the services of a vocational expert. 20 C.F.R. § 404.1566(e) (1981).

*Salinas v. Schweiker*, 662 F.2d at 348–49 (emphasis added). We have even more recently stated:

This Court has recently found reliance on these [guidelines] to be sufficient to meet the Secretary's burden of proof in

**11.** To the extent that one of Rivers' claims on appeal may be a lack of opportunity to rebut the medical assessment of her residual functional capacity, we note that Rivers was aware of all written medical reports and had the opportunity to present her own medical evidence at the hearing. Furthermore, a supplemental hearing was held to enable Rivers to cross examine Dr. Woolf, the physician upon whom the ALJ relied in his decision. Rivers' claim that she should have been given the opportunity to rebut the conclusion is unpersuasive when she had a full and fair opportunity to present evidence (and to rebut any evidence presented) which was evaluated by the ALJ in reaching that conclusion.

situations where the guidelines coincide with all relevant factors presented by the claimant's particular factual situation. *Salinas* at 349; *accord Frady v. Harris,* 646 F.2d 143 (4th Cir. 1981); *compare Cowart v. Schweiker,* 662 F.2d 731, at 732, 736 n.1 (11th Cir. 1981) (reserving the issue).

*Thomas v. Schweiker,* 666 F.2d 999, 1003 n.7 (5th Cir. 1982). *Accord, Broz v. Schweiker, supra; Kirk v. Schweiker,* 667 F.2d 524 (6th Cir. 1981); *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir. 1982); *Torres v. Secretary, supra.*[12] Thus, there is no requirement in the Act that the Secretary present direct vocational testimony to sustain his burden of persuasion that there is other substantial gainful employment in the economy which the claimant can perform. *Thomas v. Schweiker,* 666 F.2d at 999 n.3, 1003 at n.7. Rather, administrative notice of the existence of jobs taken when the guidelines were promulgated in combination with individualized medical findings and findings as to vocational characteristics (age, education and work experience) satisfies the Secretary's burden of persuasion. The pre-guideline suggestion by this court of the advisability of direct vocational testimony in some cases as a method by which the Secretary might meet his burden of persuasion never established such testimony as an explicit or implicit requirement of the Act. Likewise, the use, in limited circumstances, of the 1979 guidelines has been approved by this court as a method by which the Secretary

may sustain his burden of proof. This approval does not change the burden placed upon the Secretary to show that a claimant is capable of engaging in gainful activity. It simply changes the methodology employed. Rivers' claim that the Act requires direct vocational testimony must, under our controlling case law, fail.[13]

■ Rivers also seems to imply that the shifting of the burden of persuasion from the claimant to the Secretary implicates the opportunity (after the Secretary has presented direct vocational testimony) for rebuttal of her ability to perform specific jobs. However, as we noted above, the presentation of direct vocational testimony and the identification of specific jobs by the Secretary was simply a method utilized prior to 1979 by which the Secretary carried the burden of persuasion that there were jobs available. The subsequent offer of contradictory testimony by the claimant was not a requirement of the Act, but a component of the methodology established which comported with the Secretary's presentation of expert vocational testimony. Now, under the new guidelines, the claimant has the opportunity to present testimony and to rebut all testimony presented by the Secretary on all issues in controversy, *i.e.,* residual functional capacity, age, education and work experience. The burden of persuasion to show the ability to engage in gainful employment (after the claimant has met the burden of showing inability to engage in former employment) remains at all

---

12. The Second Circuit has determined that direct vocational testimony is a requirement of the Act.

  [O]ur major concern is that the claimant be given adequate notice of the nature and demands of the types of jobs allegedly available. Absent sufficient notice, the claimant is deprived of any real chance to present evidence showing that she cannot in fact perform the types of jobs that are administratively noticed by the guidelines .... If there are so many types of jobs available, it would not be too great a burden for the Secretary or the ALJ to specify a few suitable alternative available types of jobs so that a claimant is given an opportunity to show that she is incapable of performing those jobs. Moreover, we stress that the jobs should be speci-

fied at the hearing so that the claimant has a chance to put evidence into the record on that issue.

*Campbell v. Schweiker,* 665 F.2d 48, 53–54 (2nd Cir. 1982) cert. granted, —— U.S. ——, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982).

13. Rivers relies upon cases, *e.g., Daniel v. Gardner,* 390 F.2d 32 (5th Cir. 1968), adjudicated prior to adoption of the guidelines and cases in which the administrative hearing took place prior to adoption of the guidelines, *McCray v. Califano,* 483 F.Supp. 128 (M.D.La.1980), to support her demand for direct vocational testimony. This reliance is misplaced. The guidelines have permissibly supplanted the prior methodology utilizing vocational testimony. *Salinas v. Schweiker, supra.*

times on the Secretary. This is all the Act requires.[14]

### V. *Administrative Notice Under the APA*

■ Rivers asserts that, under the APA, there must be the opportunity, at the administrative hearing, for rebuttal of the administrative notice taken by the Secretary in the guidelines of the existence of jobs in the national economy which she could perform. The APA requires that when an "agency's decision rests on official notice of *a material fact* ..., a party is entitled, on timely request to an opportunity to show the contrary." 5 U.S.C. § 556(e) (emphasis added). Prior to the adoption of the 1979 guidelines, we noted that the APA might require, in at least some circumstances, that a claimant be allowed to rebut an ALJ's notice that jobs exist in the economy. "A quick remark *by an ALJ* that he takes official notice of availability of jobs in the national economy that would be suitable for the claimant *could be* unfair for lack of sufficient specificity." *White v. Harris*, 605 F.2d 867, 870 (5th Cir. 1979) (emphasis added).

Such opportunity to rebut the existence of employment is not required by the APA under the new guidelines as *the ALJ* does not take notice of the existence of jobs. Rather, "administrative notice of the existence of ... jobs and their requirements [was] not taken in [the case] but was taken at the rulemaking where the regulations were promulgated." *Broz v. Schweiker*, 677 F.2d at 1362. The existence of jobs is no longer, under the new guidelines, *a material fact* to be established at the hearing and subject to the requirements of 556(e). Rather:

Only the subsidiary facts upon which the regulation operates are decided or deter-

mined through the adjudicatory process. Therefore, the determinations actually made at the hearing are not based on administrative notice, and § 556(e) is thus not applicable.

*Id.*

■ The relevant question then becomes whether the finding of the existence of jobs in the economy *could* be removed from the hearing process and determined through rulemaking.

Instead, *if* the Secretary is empowered by the Act to remove an issue from litigation by determining it conclusively in rulemaking, § 556(e) is inapplicable because the administrative notice taken is not taken during adjudication.

*Id.* at 1363 (emphasis added).

■ The Court of Appeals for the Eleventh Circuit has set forth, in detail, the analysis required to determine whether the Secretary may take notice of the existence of jobs in the rulemaking process. *Id.* at 1356–1361. The court summarized administrative law as it describes facts which may be noticed in rulemaking and adjudication, noting that facts to be noticed in rulemaking must be confined to "legislative facts" while facts "about the immediate parties" (adjudicative facts) are to be determined in the adjudicative process. *Id.* at 1357. The court then determined whether the 1979 guidelines comport with this legislative fact/adjudicative fact distinction:

As discussed above, the regulations come into play at that stage of the disability determination where the issue is whether the claimant can perform substantial gainful employment other than his former job. There are two elements in this determination. First, it is necessary to decide what capabilities and qualifica-

---

**14.** While this court seemed, in one case, to state that the burden of persuasion shifted back to the claimant, *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980) ("If the Secretary *points to* possible alternative employment, the burden of persuasion then returns to the claimant to prove his inability to perform those jobs. *Johnson v. Harris*, 612 F.2d 993 (5th Cir. 1980)."), it must be noted that the court articulated that this additional shifting of the burden occurred after the Secretary "pointed" to additional employment—not after the Secretary "proved" such possible alternative employment. This articulation is simply an alternative method of describing the ultimate shifting of burden of persuasion. This decision does not alter our rule that once the burden of persuasion has shifted to the Secretary, there is no further shifting of the burden of persuasion which requires rebuttal by the claimant.

tions the claimant has, namely, residual functional capacity, age, experience, and education. Second, it is necessary to determine whether there are a substantial number of jobs in the national economy that a person with these characteristics can perform. Generally speaking, the first element is a matter of adjudicative fact; the second is not. The first looks to the individual characteristics of the claimant. This is clearly adjudicative. The second element looks to conditions of the national job market. It is concerned with broad sociological data that is not related to the individual parties. It therefore concerns nonadjudicative matters.

*Id.* at 1359. We agree with this analysis of the existence of jobs as being properly noticed legislative facts. Moreover, we find the reasoning of the Court of Appeals for the First Circuit particularly apposite to this question whether the existence of jobs may be noticed in rulemaking:

> As we have held above, the broad assessment of the national economy is more accurately and fairly performed at the national administrative level than by vocational experts in each case. It is an assessment of "legislative fact", and there is thus no need to conduct an evidentiary hearing at which an individual claimant can challenge the agency's findings. *WBEN, Inc. v. United States*, 396 F.2d 601, 618 (2d Cir. 1968) (Friendly, J.); K. Davis, Administrative Law Treatise § 12:3 (2d ed. 1979).

*Torres v. Secretary*, 677 F.2d at 169. Furthermore, the 1979 guidelines require that the facts subject to adjudication, residual functional capacity, age, education and work experience, are subject to rebuttal testimony. The claimant has the full opportunity to rebut the facts to show that the guidelines (and the administrative noticing of jobs) should not be applied to him or her. Finally, and most importantly, the guidelines (and the concommitant notice) will be applied in only very limited circumstances. *Perez v. Schweiker*, 653 F.2d 997, 1001. It is entirely logical that jobs exist in the economy which can be performed by persons whose individualized medical and vocational profiles have been finely honed as required in the guidelines. Rivers' claim that the guidelines and their legislative facts violate the APA's requirement of the rebuttal of administratively noticed adjudicative facts cannot be sustained.

## VI.   Due Process Violations

■ Rivers alleges that use of the guidelines violates her constitutional right to substantive due process under the fifth amendment. She claims that "structural due process" [15] requires an individualized determination of the question whether she can perform specific jobs and mandates the striking of the guidelines (which take notice of the existence of jobs) as a way to determine the existence of jobs which she can perform. She cites *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), as a decision in which the Supreme Court applied this concept of individualization and rebuttal to the question of an award of social security benefits.

Rivers' argument, though on its face persuasive, is unpersuasive when analyzed. This complaint of a violation of Rivers' right to substantive due process is cognizable only if this claim for social security benefits involves an assertion of a fundamental right. Tribe, "Structural Due Process," 10 Harv.C.R.—C.L.L.Rev. 269, 312 (1975). Rivers points to no authority which would support application of this theory of

---

**15.** Structural due process, according to Professor Lawrence Tribe, its originator, involves structural considerations relevant to the insuring of substantive due process as laws are applied to individuals. L. Tribe, American Constitutional Law 1137–46 (1978).

> Rules governing permissible structures of enforcement *may* . . . insist on leaving room for rebuttal and discretionary adjustment where mandatory, per se rules are either too insensitive to personal differences in matters of great moment, or too impervious to changing values and conceptions to represent a fair expression of the continuing consent of the governed.
>
> *Id.* at 1145.

substantive due process to her claim.[16] Her reliance on *Califano v. Goldfarb, supra,* is particularly misplaced. The Court premised its invalidation of social security regulations which treated males differently from females on the equal protection clause, not the due process clause. Rather, Rivers' "non-contractual claim to receive funds from the public treasury enjoys no constitutionally protected status." *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). Thus the "structural due process" theory urged upon us by Rivers is simply not applicable to her claim.

■ Rivers, in her reply brief, seems to shift from an allegation that there was a violation of substantive due process to a claim that there was a lack of procedural due process based on the Secretary's administrative notice of the existence of jobs in the economy. She apparently relies on *Bell Telephone Co. v. Public Utilities Comm'n,* 301 U.S. 292, 304–305, 57 S.Ct. 724, 730–731, 81 L.Ed. 1093 (1937), as support for her contention that procedural due process requires striking of the guidelines.[17] She asserts there was undisclosed evidence (adjudicative facts) upon which the ALJ could not, consistently with due process, base his decision. *Id.* at 304–305, 57 S.Ct. at 730–731. In answer, we reiterate that there is no constitutional property interest in the types of benefits Rivers claims which would trigger the question what process is due. Even assuming there is a constitutionally

protected interest, the flaw in Rivers' reasoning obtains from her erroneous premise that the existence of jobs was a fact to be adjudicated and that there was undisclosed evidence on that question. As we noted in part IV, *supra,* the question of the existence of jobs has been removed from the adjudicative process. The facts subject to adjudication (and on which there was no undisclosed evidence) are residual functional capacity, age, education and work experience. The procedural due process claim fails.

### VII. The District Court's Opinion

■ Rivers claims that the district court relied *solely* on unpublished Fifth Circuit authority to support its decision, that unpublished authority cannot be precedent and thus that the decision must be considered erroneous.[18] This claim is frivolous. Rule 25.4 of the Rules of the Court of Appeals for the Fifth Circuit (1981) states: Unpublished opinions are precedent. Furthermore, the Court did not rely solely on unpublished opinions. Its decision was, instead, based on a number of appropriate cases and the district court's own analysis of the guidelines.

### VIII. The Question of Substantial Evidence

As her final claim Rivers asserts that there is not substantial evidence to support the Secretary's determination that she was

---

**16.** Rivers erroneously relies on *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for the proposition that there is a property right attendant to her *application* for benefits. *Mathews,* however, dealt with the *termination* of benefits already granted and is thus distinguishable. It is *Weinberger v. Salfi, supra,* which describes the situation before us and forecloses the suggestion that Rivers has a protected property right. Additionally, Rivers' in her citation to *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), misstates the holding of that case. Rivers' statement, citing *O'Bannon,* that "[t]he Supreme Court has recently extended the protection of due process to any 'direct benefits' for which the government has statutorily provided," ignores the language of the opinion which makes it clear that it is the

*withdrawal* of these direct benefits which implicates the right to due process. *Id.* at 786–87, 100 S.Ct. at 2475–76.

**17.** We say apparently because she relies on *United States v. Florida East Coast R. R. Co.,* 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973), for the proposition that constitutional due process requires that the guidelines be struck. That case however, questioned the process required under the APA, not the Constitution.

**18.** Rivers also apparently claims that this reliance on unpublished appellate opinions is a "practice of the Secretary," apparently in an attempt to taint the Secretary's decision we are asked to review. However, there is no such reliance by the Secretary in the record.

not disabled.[19]  Our review of the record under the appropriate stand of review indicates otherwise.

On appeal, Rivers claims only that there was not substantial evidence to support the finding that she had the residual functional capacity to perform sedentary work.  Since this is a medical assessment, Rivers necessarily challenges the medical evidence introduced.  Rivers' assertion that Dr. Woolf's medical assessment cannot be considered substantial evidence is erroneous.  Woolf examined Rivers; his report provides substantial evidence of her ability to perform sedentary work.  We recognize that another physician's testimony conflicted with that of Woolf, but it was for the Secretary, not this court, to resolve such conflicts.  *Richardson v. Perales*, 402 U.S. 389, 399–401, 91 S.Ct. 1420, 1426–1427, 28 L.Ed.2d 842 (1971).  We hold that there was substantial evidence of Rivers' residual functional capacity to sustain the Secretary's decision.

AFFIRMED.

---

**19.**  Rivers also once again attempts to argue here that administrative notice of the existence of jobs is impermissible.  We have previously addressed this contention.  See parts IV and V, *supra*.