**Tomas P. PEREZ, Plaintiff-Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–2145
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1985.

Glynn A. Pugh, Corpus Christi, Tex., for plaintiff-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Thomas Stanton, Atty., Office of Gen. Counsel, Dept. of Health & Human Services, Dallas, Tex., Peter Krynski, Atty., Office of Gen. Counsel, Social Sec. Div., Dept. of Health & Human Services, Baltimore, Md., for defendant-appellee.

Before REAVLEY, TATE and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge.

Plaintiff-Appellant Tomas Perez appeals from the district court's grant of a summa-

---

ry judgment in favor of the defendant-appellee, Secretary of Health and Human Services, affirming the Secretary's decision denying the appellant's claims for a period of disability, social security disability benefits, and supplemental security income. A majority of this court being of the opinion that the district court correctly determined that the Secretary's decision was supported by substantial evidence, the judgment is affirmed.

## I.

Appellant is a fifty-six year old male who, until the time of his accident, worked as an oilfield truck driver and laborer. On May 16, 1978, Perez was unloading a piece of pipe from the bed of a truck. He slipped and fell five to six feet and landed flat on his back in a caliche pit. After his fall Perez worked several more hours that day before leaving work due to severe back pain. Except for several days driving a dump truck, which he had to cease due to back pain, Perez has not worked since the date of his fall. His doctors agree that he cannot return to his past job or accept any job that would require heavy lifting, bending, or twisting.

In June 1978, Dr. George Barnes, Perez's treating physician, diagnosed a pre-existing spondylosis of the lumbar spine, aggravated by the fall the preceding month. Dr. Barnes referred Perez to a radiologist, Dr. M.J. Henry, who further diagnosed degenerative arthritis in the pelvic region. On December 5, 1978, Perez was examined by Dr. Joseph Klotz, a neurologist, who discovered that Perez also suffered from diabetic neuropathy. The neuropathy causes Perez to suffer pain, and the pain is aggravated by any other injuries the patient suffers. Both Dr. Barnes and Dr. Klotz concluded that Perez was incapable of performing heavy labor. Another doctor, Dr. Marques Rhoades, an orthopedic surgeon and rehabilitation specialist, treated Perez in 1979 and diagnosed a chronic myofascial syndrome. Dr. Rhoades also agreed that Perez should not return to a job requiring heavy or moderate lifting, bending, or twisting.

In addition to his back problem, Perez suffers or has suffered numerous other medical problems. On July 26, 1979, Perez was working under his car when the jack supporting the car broke and the car fell on his shoulders and chest. After three days in the hospital, he was discharged. Less than two months later, on September 18, 1979, he was admitted to the hospital with an infection of the left great toe. The infection was related to the diabetes Perez had suffered from since 1961; on September 20 doctors amputated the toe. On December 8, 1979, he was admitted to the hospital with infected ulcers on his right foot. This hospital stay lasted until December 26, 1979.

On July 24, 1980, Perez saw an ophthalmologist, Dr. Charles Campbell. The ophthalmologist diagnosed Perez's visual acuity as 20/20 in the left eye and 20/200 in the right eye, improved to 20/100 with pinhole. Dr. Campbell also discovered proliferative diabetic retinopathy and treated the retinopathy with argon laser photocoagulation. Dr. Campbell reported that the treatment was applied without complication and that Perez did well. On September 19, 1980, a small tear to the rotator cuff in Perez's right shoulder was repaired by Dr. Rufino Gonzalez, an orthopedic surgeon. While Perez is unable to lift his right arm above his shoulder, he has near normal use of his arm below that level. Perez also suffers from mild hypertension and obesity, and in 1982 he stated that he was suffering from a blurring of vision in his right eye.

Perez submitted his applications for a period of disability, for disability insurance benefits, and for supplemental security income on August 29, 1979, pursuant to 42 U.S.C. §§ 416(i), 423, and 1381a.[1] The

---

1. The evaluation process under each of these sections is identical; however, the regulations applying these sections are contained in different parts of the Code of Federal Regulations. Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions

claims were denied, and Perez requested a hearing before an Administrative Law Judge (ALJ). After a hearing held on July 25, 1980, the ALJ issued a decision on October 29, 1980, denying Perez's claims. The Social Security Administration Appeals Council denied Perez's request for a review, making the ALJ's decision the final decision of the Secretary. Perez then filed suit in federal district court. The district court reversed the Secretary's decision because the ALJ had misapplied the law. The ALJ had required Perez to prove not only that he could not perform his former work but also that he could not perform any other substantial gainful activity. Because the burden of proof shifts to the Secretary when the claimant, as Perez did, proves that he cannot perform his past work, the district court remanded the case to the Secretary for further findings consistent with a proper application of the law.

On remand a different ALJ held a hearing on September 1, 1982, and issued a recommended decision denying appellant's claim. The Appeals Council adopted the findings and conclusions of the ALJ. Perez again returned to federal court; however, this time the district court found that the Secretary had met her burden of proving that Perez could perform other substantial gainful activity and affirmed the decision of the Secretary by entering summary judgment in her favor. This appeal followed.

## II.

On appeal, as in the district court, the Secretary's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) ("the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...."); *Scott v. Heckler*, 770 F.2d 482, 484 (5th Cir.1985). The issue before this court is whether substantial evidence supports the Secretary's decision that Perez is not disabled within the meaning of the Social Security Act.

*Owens v. Heckler*, 770 F.2d 1276, 1279 (5th Cir.1985). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For purposes of determining whether a person is disabled, the person

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2). The burden of proof is on the claimant to prove that he is disabled, *Fortenberry v. Harris*, 612 F.2d 947, 949 (5th Cir.1980); *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir.1980); however, when the claimant shows that he is unable to return to his former work, the burden shifts to the Secretary to show that there is other substantial gainful employment in the national economy which the claimant is capable of performing. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983); *Western v. Harris*, 633 F.2d 1204, 1207 (5th Cir. 1981).

All of the doctors who reached a conclusion as to whether Perez could return to

---

of the two sets of regulations are identical, the citations in this opinion will be limited to one of

these regulations, 20 C.F.R. pt. 404 (1985).

his former work concluded that he could not; therefore, as the district court noted in its first decision, the burden shifted to the Secretary to show that there is other gainful employment in the national economy which Perez is capable of performing. The ALJ thereafter found that Perez was not under a disability because there exists substantial gainful employment in the national economy which he is capable of performing.

One method the Secretary may use to meet her burden is to call a vocational expert to testify about the jobs the claimant can perform, *Salinas v. Schweiker*, 662 F.2d 345, 348 (5th Cir.1981); however, the Secretary is not required to present direct testimony in order to sustain her burden. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir.1982). Rather, the Secretary may make use of administrative guidelines to meet her burden. *Id.* at 1153. The guidelines may be applied in a case, such as Perez's, where the claimant is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. 20 C.F.R. § 404.1569 (1985). The guidelines operate by considering a claimant's residual functional capacity, age, education, and work experience. After the ALJ determines the claimant's residual functional capacity, age, education, and work experience, the ALJ ascertains whether the determinations coincide with those listed in the guidelines. If the factors do coincide, the guidelines direct

the conclusion of whether a claimant is capable of other substantial gainful employment in the national economy. *Id.* at 1152. The guidelines, in effect, take administrative notice of the existence of jobs in the national economy that a person falling within the guidelines could fill. *Salinas*, 662 F.2d at 348.

In the instant case the Secretary presented both a vocational expert and applied the guidelines. Perez argues that he was unable to perform any of the jobs suggested by the expert and that, therefore, the Secretary has not met her burden. We need not reach this question, however, because we find that there was substantial evidence to support the Secretary's finding under the guidelines.

When use of the guidelines is permitted, and when the ALJ chooses to use the guidelines, the ALJ begins by determining the claimant's residual functional capacity, age, education, and work experience. The ALJ determined Perez's residual functional capacity to be sedentary work, his age to be approaching advanced age, his education to be limited or less, and his work experience to be semiskilled—skills transferable. After making the necessary determinations, an ALJ using the guidelines next turns to 20 C.F.R. pt. 404, subpt. P, app. 2, and determines whether any of the guidelines coincide with the ALJ's determinations. In appellant's case one set of the guidelines coincided with the ALJ's determinations:

TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Prev. Work Experience | Decision |
|------|-----|-----------|----------------------|----------|
| 201.11 | Closely approaching advanced age. | Limited or less. | Skilled or semiskilled— skills transferable. | Not disabled. |

20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.11 (1985). Applying his determinations about Perez's residual functional capacity,

age, education, and work experience to the guidelines, the ALJ determined that the guidelines directed that he find Perez not

disabled. *Id.* Our review of the Secretary's decision requires us to determine whether the ALJ's and hence the Secretary's determinations as to residual functional capacity, age, education, and work experience were supported by substantial evidence. *Salinas,* 662 F.2d at 349.

The first finding made by the ALJ was that Perez's residual functional capacity was sedentary work. The Social Security Administration defines sedentary as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567 (1985). Our review of the record convinces us that there was substantial evidence to support the ALJ's determination that Perez was capable of performing sedentary work. Perez's treating physician, Dr. Barnes, stated that: "It is my opinion that Mr. Perez can perform light duties satisfactorily but I do not believe that he is physically capable of performing heavy manual labor which it is my understanding is required of a swamper aboard a truck." Dr. Klotz, the consulting neurologist who diagnosed Perez's diabetic neuropathy, stated:

> [T]he patient as far as performing heavy duties is concerned is probably incapable of performing same but could be able to carry out light duties. I have told him in no uncertain terms that I have patients equally bad or somewhat worse with diabetic neuropathy who are being quite productive in lighter forms of employment.

The physician who treated Perez for several months in 1979, Dr. Rhoades, after Perez's last visit to him, stated:

> At this time based on the length of time since onset of his symptoms I feel his prognosis for return to any position requiring lifting, bending, excessive twisting etc. is poor. I have so informed him. I feel he can continue being followed by Dr. Oliveira and a letter will be sent to her. I do feel he is capable to [sic] some employment and would estimate his degree of permanent impairment at 15 percent.

At the time of Dr. Rhoade's prognosis, Perez had already suffered the back injury and the chest and shoulder injury; additionally, he was being treated for diabetes and hypertension at this time. Since the time of Dr. Rhoades's prognosis, Perez has lost his left great toe and has been diagnosed as having diabetic retinopathy. While no doctor has passed on whether Perez may be capable of work with these additional ailments, the ALJ considered all of Perez's medical problems and concluded that he was capable of performing sedentary work. The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. *Jones,* 702 F.2d at 616. Our review of the evidence leads us to the conclusion that the ALJ's decision that Perez is capable of sedentary work was supported by substantial evidence.

The ALJ next determined Perez's age classification. The ALJ determined that Perez was a person approaching advanced age. The regulations define a person approaching advanced age as a person age fifty to fifty-four. 20 C.F.R. § 404, 1563(c) (1985). Perez testified that he was born on August 10, 1929; thus, at the time of his hearing on September 1, 1982, he was fifty-three years old. The ALJ's determination as to Perez's age classification clearly was supported by substantial evidence.

The ALJ's next determination involved Perez's education. The ALJ determined that Perez's education was limited or less, the lowest available category in Perez's case. Perez testified that he had no formal education, and was unable to read and write; therefore, substantial evidence supported the ALJ's determination that Per-

ez's education placed him in the limited or less category.

The ALJ's last determination was that Perez's work experience was semiskilled—skills transferable. The regulations define semiskilled work as follows:

Semiskilled work is work which needs some skills but does not require doing the more complex work duties. Semiskilled jobs may require alertness and close attention to watching machine processes; or inspection, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex then unskilled work. A job may be classified as semiskilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(b) (1985). Transferability is defined as follows:

We consider you to have skills that can be used in other jobs, when the skilled or semiskilled work activities you did in past work can be used to meet the requirements of skilled or semiskilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

*Id.* § 404.1568(d). Perez testified that his main work was as a truck driver. Truck driving requires coordination, dexterity, alertness, and use of the hands and feet; therefore, the ALJ's determination that Perez's past work experience was semiskilled was supported by substantial evidence. The vocational expert testified that the dexterity, eye-hand coordination, and the driving and operating skills Perez had developed were transferable to another job. Thus, the ALJ's determination that Perez had transferable skills was supported by substantial evidence.

Since all of the ALJ's determinations as to Perez's residual functional capacity, age, education, and work experience were sup-ported by substantial evidence, and since the determinations coincided with factors in the guidelines, the ALJ could properly use the guidelines. Applying the various factual determinations to the guidelines, the guidelines direct that Perez be declared not disabled. Thus, the Secretary met her burden of proving that Perez was capable of other substantial gainful activity.

The district court's grant of summary judgment in favor of the Secretary is AFFIRMED.

Circuit Judge TATE dissents, believing that (as the magistrate found) by substantial and greatly preponderating evidence the record reveals that the multiple disabilities of Perez, including his distorted eyesight, preclude him from obtaining gainful employment. Judge Tate further believes that the opinion of the vocational expert, with the admissions on cross-examination, likewise supports this conclusion.